UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Fellicia Smith,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Starr, Warden; Hiller, Unit Manager;<br>Wilson, Trust Fund; Nelson, Commissary;<br>each being sued in their individual and<br>official capacities; and Federal<br>Correctional Institution, Waseca,<br><br>　　　　　　Defendants. | Civ. No. 21-2703 (SRN/BRT)<br><br>REPORT AND<br>RECOMMENDATION |

Fellicia Smith, *pro se* Plaintiff.

Ana H. Voss, Esq., United States Attorney's Office, counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

　　　This case arises from *pro se* Plaintiff Fellicia Smith's 42 U.S.C. § 1983 Complaint, alleging that the Defendants violated her religious rights by burdening her ability to adhere to a religious diet while incarcerated at the Federal Bureau of Prisons ("BOP") in Waseca, Minnesota ("FCI Waseca"). On May 9, 2022, Defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment. (Doc. No. 45.) Plaintiff did not file a response to Defendants' motion. For the reasons set forth below, this Court recommends that Defendants' motion for summary judgment be granted, and this action be dismissed without prejudice for failure to exhaust administrative remedies.

## I. Background

Plaintiff Fellicia Smith is an inmate incarcerated at FCI Waseca. While at FCI Waseca, Smith complained about FCI Waseca's food offerings, stating that she found it difficult to practice her religious dietary beliefs.[1] Specifically, Smith complained about the commissary, which serves as a store where inmates can purchase merchandise and services, including food that may not be available through the mainline food service. (Doc. No. 51, Declaration of Jacqueline Wilson ("Wilson Decl.") ¶ 4.)

On September 7, 2021, Smith filled out an Informal Resolution Attempt form in which she complained that the commissary was not offering kosher/halal entrees. (Doc. No. 47, Declaration of Shannon Boldt ("Boldt Decl."), Ex. B at 3.) Defendant Hiller responded on September 8, 2021, indicating that Smith could purchase meals through the special purpose order ("SPO") program, which allows inmates to purchase an approved item or items not routinely sold in the commissary.[2] (*Id.*; Wilson Decl. ¶ 7.) Smith

---

[1]   FCI Waseca provides a religious diet program to all inmates, which includes self-selection from the mainline food service as well as religious certified processed foods that provides inmates with both kosher and halal meal options. (Doc. No. 49, Declaration of Jeremiah L Lee ("Lee Decl.") ¶¶ 4–6; Doc. No. 28, Declaration of Chaplain Craig Dolsberry ("Dolsberry Decl."), Ex. A at 2.) Inmates may request to participate in the certified component of the religious diet program. (Dolsberry Decl. ¶ 5.) On December 23, 2021, Smith was interviewed for the certified component of the religious diet program but was ultimately denied because the self-selection from the mainline food service met her religious needs. (*Id.* ¶¶ 9–11.)

[2]   FCI Waseca does not have a significant population requesting kosher or halal shelf-stable entrees, so while the commissary sells items that could meet kosher or halal standards, it does not currently stock kosher or halal shelf-stable entrees specifically. (Wilson Decl. ¶ 17.) These types of entrees are instead made available via the SPO process. (*Id.*)

2

received the response to her Informal Resolution Attempt on November 4, 2021. (Boldt Decl., Ex. B at 3.)

On November 9, 2021, Smith submitted Administrative Remedy 1100942-F1 to the Warden of FCI Waseca. (Boldt Decl. ¶ 13, Ex. A at 8; Ex. B at 2.) In Administrative Remedy 1100942-F1, Smith again took issue with the commissary's sale of kosher/halal entrees, arguing she should not have to purchase a case of one type of meal[3] and she should be able to choose different meals. (Boldt. Decl. ¶ 13; Ex. B. at 2.) Smith also argued that some of the meal options required reheating, which was not available. (*Id.*) On December 20, 2021, the Warden responded to Administrative Remedy 1100942-F1, explaining, among other things, that the vendor could only process orders by the case and that each meal was fully cooked, shelf stable, and could be consumed without reheating. (*Id.*, Ex. B at 1.)

After an initial appeal was procedurally rejected as premature (*see* Boldt Decl. ¶ 14, Ex. A at 10), Smith submitted Administrative Remedy 1100942-R2 to the Regional Director on December 23, 2021. (Boldt Decl. ¶ 14, Ex. A at 12, Ex. C at 2.) Again, Smith complained it was unreasonable to require her to purchase a case of twelve meals at a time for a price over $95. (Boldt Decl. ¶ 14, Ex. C at 2.) She acknowledged the Warden advised that commissary entrees are supposed to complement the mainline food service program where inmates receive their regular meals, but she stated that the Warden cannot

---

[3] The BOP's vendor for kosher/halal shelf-stable entrees sells entrees by the case, with each case including twelve of the same entrees. (Wilson Decl. ¶ 19.)

force her to eat from the mainline food service. (*Id.*) On January 14, 2022, the Regional Director responded, indicating FCI Waseca was following policy by making meals available through SPO with their vendor and that the pricing appropriately reflected the actual cost and mark-up of 30% for commissary and SPO items.[4] (Boldt Decl. ¶ 14, Ex. C at 1.)

On February 15, 2022, Smith appealed the response to Administrative Remedy 1100942-R2 to the BOP's Central Office. (Boldt Decl. ¶ 15; Ex. A at 15; Ex. D.) Smith reiterated her complaints that it was unreasonable to require her to purchase a case of the same kosher/halal meal at one time. (Boldt Decl. ¶ 15, Ex. D at 3.) She also again complained about the cost of the meals. (*Id.*) The National Inmate Appeals Administrator responded, on March 15, 2022, noting that Smith's religious dietary needs could be met by self-selecting options through the mainline food service. (Boldt Decl. ¶ 15, Ex. D at 1.) He also indicated that FCI Waseca had located a vendor to provide individual meals. (*Id.*)

## II. Analysis

While Smith was still appealing her complaint through the BOP's administrative remedy process, Smith filed the instant Complaint on December 20, 2021, challenging FCI Waseca's food offerings and the BOP's religious diet program. (Doc. No. 1, Compl.) Smith alleges in her Complaint that Defendants (named in their official and individual

---

[4]  Items sold in the commissary and through SPO are ordinarily subject to a 30% mark-up (except during Passover). (Wilson Decl. ¶ 10.)

capacities) violated her religious rights by burdening her ability to buying a religious diet through the commissary. (*Id.*)

Defendants argue that this Court should dismiss Smith's Complaint or, in the alternative, grant Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (*See* Doc. No. 53, Defs.' Mem. in Supp. of Mot. to Dismiss and/or for Summ. Judg. ("Defs.' Mem.").) Defendants assert several grounds for dismissal, including Smith's failure to exhaust her administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), codified at 42 U.S.C. § 1997e.

In general, it is inappropriate to dismiss a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) when raising a failure to exhaust available administrative remedies. *See Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007) ("Under the [PLRA], failure to exhaust the available administrative remedies is . . . not a matter of subject matter jurisdiction."). Thus, this Court considers whether a conversion from a Rule 12(b)(6) motion to a Rule 56 motion is appropriate.

A motion to dismiss argued under Rule 12(b)(6) must be treated as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court . . . ." Fed. R. Civ. P. 12(d). Matters outside the pleadings include "'any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings.'" *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366). Here, because Defendants present evidence outside the pleadings for

support, this Court treats Defendants' motion to dismiss as a motion for summary judgment under Rule 56. *See*, *e.g.*, *Gibb*, 958 F.2d at 816.[5]

### A. Standard of Review

Summary judgment is appropriate if, "after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011) (quotation omitted). In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A disputed fact is material when its resolution "might affect the outcome of the suit under the governing law," and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

---

[5] When matters outside the pleadings are considered—and a motion to dismiss is converted to a motion for summary judgment—courts are generally required to give the parties notice of the change of status. *See*, *e.g.*, *Court v. Hall Cnty., Neb.*, 725 F.2d 1170, 1172 (8th Cir. 1984) (stating that "[o]nce the district court decided not to exclude the extrinsic material, however, it was essential that the court give the parties notice of the changed status of the motion"). Here, Smith had adequate notice that Defendants' motion would be treated as a summary-judgment motion because Defendants designated their motion as a summary-judgment motion and submitted additional evidence in the form of Declarations and exhibits. *See*, *e.g.*, *Pinson v. Hadaway*, No. 18-CV-3420-NEB-KMM, 2020 WL 6121357, at *4 (D. Minn. July 13, 2020), *report and recommendation adopted*, 2020 WL 5543749 (D. Minn. Sept. 16, 2020).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001) (quotations omitted). If it does so, the non-moving party may not rest on mere allegations or denials but must point to evidence of "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see also* Fed. R. Civ. P. 56(c)(1). Conclusory assertions, standing alone, are not enough to create a genuine issue of material fact. *See Bennett v. Nucor Corp.*, 656 F.3d 802, 820 (8th Cir. 2011). Where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

When deciding a summary-judgment motion, courts liberally construe pro se pleadings and hold them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, a pro se plaintiff's claims cannot survive a summary-judgment motion unless she has set forth specific facts demonstrating that there is a genuine issue for trial. *See Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Arguments and statements in briefing are not evidence and cannot create issues of fact for purposes of summary judgment. *See Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 467 n.6 (8th Cir. 2002).

**B.      Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before bringing a suit regarding prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). A suit regarding prison conditions includes both claims about "general circumstances" of confinement and claims regarding "particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Administrative exhaustion is required regardless of the nature of the relief the prisoner seeks. *Porter*, 534 U.S. at 532 ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life . . . whether they allege excessive force or some other wrong."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly").

The PLRA does not specify an exhaustion procedure; for a prisoner's claims to be considered administratively exhausted, the prisoner must follow the grievance procedure of the facility where they are incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The BOP has a four-step administrative remedy procedure. 28 C.F.R. §§ 542.10–.19. First, a prisoner must bring the issue to a staff member, who should attempt to informally resolve the issue. 28 C.F.R. § 542.13(a). Second, if the issue is not informally resolved, the prisoner must submit an Administrative Remedy Request. *Id.* § 542.14. If the warden denies the Administrative Remedy Request, the prisoner must, third, appeal the denial to the BOP's Regional Director. *Id.* § 542.15(a). Fourth and finally, if that appeal is denied,

8

the prisoner must appeal again, this time to the BOP's Central Office. *Id.* Thus, under the BOP's administrative remedy procedure, a claim is not fully exhausted until the BOP's Central Office has denied it. *See id.*

The PLRA contains no exceptions to its requirement that prisoners administratively exhaust their remedies. *Ross v. Blake*, 578 U.S. 632, 637–40 (2016). There are, however, certain circumstances where administrative exhaustion procedures may not be "available" for purposes of the PLRA. *Id.* at 640–46. These circumstances include: (1) when the procedure would be a "dead end" because officers are unable or unwilling to provide relief; (2) when the procedure is so opaque as to become "incapable of use"; and (3) when prison officials prevent a prisoner from utilizing the procedure through "machination, misrepresentation, or intimidation." *Id.* at 642–46.

Here, Smith did not exhaust the BOP's administrative remedy procedure before filing her Complaint. Instead, Smith filed her Complaint on December 20, 2021, before she had submitted an appeal to the Regional Director, the third step in the BOP's administrative remedy process. Since her Complaint, Smith has completed the remainder of the BOP's administrative remedy process. However, the PLRA requires that Smith exhaust her administrative remedies *at the time* of filing her Complaint, not after. *See, e.g.*, *Harris v. Kemna*, 155 F. App'x 941, 941–42 (8th Cir. 2005) ("Accordingly, we affirm on the ground that Harris had failed to exhaust his Eighth Amendment claim at the time of filing."); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (concluding that if

exhaustion is not completed at time of filing, dismissal is mandatory). Thus, Smith failed to exhaust her administrative remedies with the BOP.[6]

In sum, Defendants have met their burden to show that Smith had administrative remedies available and failed to exhaust them before filing a Complaint with this Court. The PLRA thus bars her claims and this Court recommends that Defendants' motion for summary judgment be granted and that this action be dismissed without prejudice.[7]

## RECOMMENDATION

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. No. 45) be **GRANTED**; and

---

[6] Smith did not file a response to Defendants' motion to dismiss but instead raised arguments concerning the administrative remedy process in her reply brief to her earlier motion for a preliminary injunction and in her objection to Magistrate Judge Hildy Bowbeer's Report and Recommendation. (*See* Doc. Nos. 35, 44.) To the extent Smith still maintains these arguments, this Court recommends that they be denied for the reasons already concluded by the Court in its May 12, 2022 Order. (*See* Doc. No. 58.)

[7] Because this Court recommends that summary judgment in favor of Defendants be granted due to Smith's failure to exhaust her administrative remedies, this Court does not address the other arguments raised by Defendants. *See Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (holding an inmate "must first have exhausted his administrative remedies pursuant to the grievance procedure of the prison before his civil rights complaint could proceed"); *Saldana v. Crane*, No. 12-cv-573 (DWF/TNL), 2013 WL 4747961, at *13 (D. Minn. Sept. 4, 2013) ("Because Saldana has not exhausted his administrative remedies regarding these claims, this Court will not proceed to a discussion of their merits."); *see Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("If exhaustion was not completed at the time of filing, dismissal is mandatory."); *Barbee v. Corr. Med. Servs.*, 394 F. App'x 337, 338 (8th Cir. 2010) (holding that "the district court should not have reached the merits of [the prisoner's] claims" where the defendants raised a nonexhaustion defense and the record supported that defense).

2.      This action be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995.


Dated: August 18, 2022                *s/ Becky R. Thorson*
                                      BECKY R. THORSON
                                      United States Magistrate Judge


**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).